FILED & ENTERED

NOV 20 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY zick          DEPUTY CLERK

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12-22878-MLB |
| | ) | U.S. Bankruptcy Court |
| | ) | Western District of Washington |
| ALBERT STEPHEN MORIARTY, JR., | ) | |
| | ) | Adversary No. 9:14-ap-01131-PC |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| MICHAEL P. KLEIN, Chapter 7 Trustee | ) | |
| for the Bankruptcy Estate of Albert | ) | |
| Stephen Moriarty, Jr., | ) | **MEMORANDUM DECISION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | Date:   November 6, 2014 |
| CALIFORNIA STATE UNIVERSITY, | ) | Time:   9:30 a.m. |
| et al., | ) | Place:  United States Bankruptcy Court |
| | ) | Courtroom # 201 |
| Defendants. | ) | 1415 State Street |
| | ) | Santa Barbara, CA 93101 |

On September 10, 2014, the Board of Trustees of the California State University, which

is the State of California operating in a higher education capacity, and includes California

Polytechnic State University San Luis Obispo ("Cal Poly"), and California Polytechnic State

University Foundation (the "Foundation," and collectively "Defendants") removed to this court

Case No. 14CV-0402, <u>Klein v. The Board of Trustees of the California State University, et al.</u>,

1

filed in the Superior Court of California, County of San Luis Obispo, on July 24, 2014, pursuant

to 28 U.S.C. §§ 1331, 1334, 1441, and 1452 and FRBP 9027.[1]  Defendants now seek to dismiss

the adversary proceeding pursuant to F.R.Civ.P. 12(b)(1), (3) and (6) or, alternatively, to transfer

venue of the adversary proceeding to the Western District of Washington pursuant to 28 U.S.C. §

1412.  Having considered the pleadings, evidentiary record and arguments of counsel, the court

will (1) deny Defendants' Motion to Transfer Venue; and (2) grant, in part, and deny, in part,

Defendants' Motion to Dismiss with leave to amend.

## I. STATEMENT OF FACTS

On April 28, 2009, Albert Steven Moriarty, Jr. ("Debtor") and his spouse, Patty Moriarty,

the Foundation, and Cal Poly entered into a gift agreement entitled the Moriarty Scoreboard

Fund (the "Agreement") under the terms of which the Foundation agreed to establish the

Moriarty Scoreboard Fund ("Fund").  Debtor and his spouse agreed to donate not less than

$600,000 to the Fund; and in consideration therefor, the Foundation agreed to use the Fund

exclusively for the purchase of a new video scoreboard for the Alex G. Spanos Stadium on the

campus of Cal Poly.  Debtor and his spouse made an initial donation to the Fund through First

American Title Company by a cashier's check payable to the Foundation in the amount of

$600,000 dated June 21, 2009.  Debtor made a further donation to the Fund by check # 3414

payable to the Foundation in the amount of $25,000 dated August 20, 2009.  According to the

testimony of Chris Baker, Cal Poly's Associate Athletic Director for Advancement, "[i]n

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule"
references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable
certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local
Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California
("LBR").

exchange for the monies received, per the Agreement Cal Poly agreed to place 'Moriarty Enterprises' at the top of the Scoreboard, where it remains to this day."[2]

On December 31, 2012, Debtor filed a voluntary petition under chapter 7 of the Code in Case No. 12-22878-MLB, In re Albert Stephen Moriarty, Jr., Debtor, in the United States Bankruptcy Court, Western District of Washington.  Michael P. Klein ("Klein") was appointed as trustee.

By letter dated May 28, 2013, Klein's counsel advised Zachary Gifford, Associate Director of the California State University, that Debtor's donations to the Fund were, in Klein's view, fraudulent transfers in violation of California's Uniform Fraudulent Transfer Act ("CUFTA"), Cal. Civ. Code § 3439, et seq., and recoverable through § 544(b) of the Code. Klein's counsel asserted that Debtor allegedly did not receive reasonably equivalent value in exchange for the transfers, and demanded that the sum of $650,000[3] be turned over to the estate not later than June 28, 2013.  Settlement negotiations followed without success.

On July 24, 2014, Klein filed a complaint against the Defendants in Case No. 14CV-0402, Klein v The Board of Trustees of the California State University, et al., in the Superior Court of California, County of San Luis Obispo, seeking to avoid the two transfers totaling $625,000 and to recover such sum for the benefit of the estate.  Klein alleges that: (1) the amount is recoverable under CUFTA § 3439.04 and 11 U.S.C. § 544(b) in that each transfer was made with the actual intent to hinder, delay or defraud creditors of the Debtor; or alternatively, (2) the amount is recoverable under CUFTA § 3439.05 and 11 U.S.C. § 544(b) because each transfer was made for less than reasonably equivalent value, and Debtor was insolvent at the time of, or became insolvent as a result of, the transfers.

---

[2]  Declaration of Christopher M. Alston in Support of Motion to Transfer Venue [Dkt. # 5-2], 6:3-5.

[3]  Although Klein's counsel demanded a turnover of $650,000, there is no evidence in the record to suggest that the subject transfers exceeded the total sum of $625,000.

On September 10, 2014, Defendants removed the pending state court action to this court pursuant to 28 U.S.C. § 1446(a), 28 U.S.C. § 1452(a), and FRBP 9027.  On September 17, 2014, Defendants filed their Motion to Dismiss and Motion to Transfer Venue.  On October 6, 2014, Klein filed a Motion for Order Remanding Matter to the California Superior Court for the County of San Luis Obispo.[4]  On October 23, 2014, Klein filed opposition to Defendants' Motion to Dismiss and Motion to Transfer Venue to which the Defendants replied on October 30, 2014.  After a hearing on November 6, 2014, Defendants' Motion to Transfer Venue and Motion to Dismiss were taken under submission.

## II. DISCUSSION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b), 1334(b), 1446(a), and 1452(a).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).  Venue is appropriate in this court.  28 U.S.C. § 1409(a).  To the extent that the claims made the basis of Klein's complaint constitute "Stern claims,"[5] Defendants expressly consent to the entry of a final judgment by the bankruptcy court.[6]

---

[4]  Klein withdrew his motion seeking a remand of the removed action by Voluntary Dismissal of Motion for Order Remanding Matter to the California Superior Court for the County of San Luis Obispo [Dkt. # 30] filed November 4, 2014.

[5]  "These claims are called 'Stern claims,' so named after the Supreme Court's decision in Stern v. Marshall, ___ U.S., ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).  Stern claims are claims 'designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter.'"  Mastro v. Rigby, 764 F.3d 1090, 1093 (9th Cir. 2014) (citation omitted).

[6]  Notice of Removal Pursuant to 28 U.S.C. §§ 1441 and 1452 (Civil Action Arising Under and Related to a Case Under Title 11 and Federal Question) ("Removal Notice") [Dkt. #1], 3:23 – 4:2.

A. <u>Defendants' Motion to Dismiss Under F.R.Civ.P. 12(b)(3) for Improper Venue Will Be
Denied</u>.

Defendants claim that Klein "commenced this action in San Luis Obispo Superior Court,

which is clearly an improper venue:  section 1409(c) authorizes [Klein] to file suit in a <u>district</u>

court." (emphasis in original).[7]  According to Defendants, "[v[enue in the Superior Court and in

this Court is not proper under section 1409(a) of the Judicial Code because the Chapter 7 Case is

not pending in this district."[8]  Defendants further claim that:

> The Trustee fails to offer a basis for venue in this Court, as the Complaint
> contains no factual allegations that a creditor could have commenced a UFTA
> action against the Defendants in this district.  The Complaint does not contain
> even a boilerplate assertion that venue is proper in the Superior Court, this Court,
> or in any court at all.[9]

Section 1409 is a federal venue statute.[10]  It is not jurisdictional.  The district court has

original but not exclusive jurisdiction of "civil proceedings arising under title 11, or arising in or

related to cases under title 11." 28 U.S.C. § 1334(b).  <u>See, e.g.</u>, <u>In re Mystic Tank Lines Corp.</u>,

544 F.3d 524, 528 (3rd Cir. 2008) ("No provision of the Bankruptcy Code requires the

Bankruptcy Court to hear all 'related to' claims."); <u>Maitland v. Mitchell (In re Harris Pine Mills)</u>,

44 F.3d 1431, 1434-35 (9th Cir. 1995) ("Federal courts have . . . concurrent jurisdiction over all

---

[7] Defendants' Motion to Dismiss ("Dismissal Motion") [Dkt. # 6], 23:6-7.

[8] Defendants' Motion to Transfer Venue ("Venue Motion") [Dkt. # 5], 13:4-5.

[9] Dismissal Motion, 23:10-13.

[10] Section 1409(a) states, in pertinent part, that "a proceeding arising under title 11 or arising in
or related to a case under title 11 <u>may</u> be commenced in the district court in which such case is
pending." 28 U.S.C. § 1409(a).  Section 1409(c) further states, in pertinent part, that "a trustee
in a case under title 11 <u>may</u> commence a proceeding arising in or related to such case as statutory
successor to the debtor or creditors under section 541 or 544(b) of title 11 in the district court for
the district where the State or Federal court sits in which, under applicable nonbankruptcy venue
provisions, the debtor or creditors, as the case may be, may have commenced an action on which
such proceeding is based if the case under title 11 had not been commenced.  28 U.S.C. §
1409(c) (emphasis added).

civil proceedings arising under Title 11, or arising in or related to cases under Title 11.  Those

matters falling under the heading of concurrent jurisdiction . . . may be filed originally in state

court, then subsequently removed by one of the parties to federal district court.") (citations

omitted)); Sanders v. City of Brady (In re Brady, Texas, Municipal Gas Corp.), 936 F.2d 212,

218 (5th Cir. 1991) ("[T]he only aspect of the bankruptcy proceeding over which the district

courts and their bankruptcy units have exclusive jurisdiction is 'the bankruptcy petition itself.'

In other matters arising in or related to title 11 cases, unless the Code provides otherwise, state

courts have concurrent jurisdiction . . . .") (citations omitted)).

    Klein's statutory duties as trustee include "collect[ing] and reduc[ing] to money property

of the estate." 11 U.S.C. § 704(a)(1).  Klein, as trustee, has standing and authority to pursue

avoidance actions under § 544.  See 11 U.S.C. § 544(a).  Any interest in property either (a)

recovered by Klein under § 550; or (2) preserved by Klein for the benefit of and ordered

transferred to the estate pursuant to § 551 constitutes property of the estate.  11 U.S.C. §

541(a)(3) & (4).  In exercising his statutory authority, Klein elected to pursue the estate's claims

against Defendants under § 544 in the Superior Court of California, which has concurrent

jurisdiction to adjudicate claims that arise under or relate to a title 11 case.  Venue of such an

action against Defendants was appropriate in "the superior court in the county where the

defendants or some of them reside at the commencement of the action." Cal. Code Civ. P. §

395(a).  Klein's complaint alleges that both Cal Poly and the Foundation  are "located in San

Luis Obispo County, California."[11]  Neither Cal Poly nor the Foundation dispute that their

respective principal office or place of business is in San Luis Obispo County, California.  Having

determined that venue was appropriate in the Superior Court of California, County of San Luis

Obispo prior to Defendants' removal of the proceeding to this court, Defendants' Motion to

Dismiss Klein's complaint under F.R.Civ.P. 12(b)(3) will be denied.

---

[11] Removal Notice, 10:8-13.  Klein's complaint also alleges that he "has standing to assert the
claims . . . because, at all times material hereto, there was and is at least one creditor of Moriarty
in existence at the time of the Transfer who holds an allowed unsecured claim against Moriarty
that was and is allowable under Bankruptcy Code § 502." Id. at 12:17-20.

B.  <u>Defendants' Motion to Transfer Venue Will Be Denied</u>

Defendants further assert that, even if the court was to find that venue is proper, a transfer of venue under 28 U.S.C. § 1409 would serve both the interest of justice and the convenience of the parties.[12]   The court disagrees.

1.  <u>Standard</u>.

Venue of an adversary proceeding may be transferred to another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.  Because § 1412 is written in the disjunctive, venue of an adversary proceeding may be transferred if either criteria is satisfied. <u>A.B. Real Estate, Inc. v. Bruno's Inc. (In re Bruno's, Inc.)</u>, 227 B.R. 311, 324 (Bankr. N.D. Ala. 1998).  "The party that seeks to transfer venue bears the burden of showing by a preponderance of the evidence that transfer would be appropriate." <u>TIG Ins. Co. v. Smolker</u>, 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001).  "The decision whether venue should be transferred lies within the sound discretion of the Court." <u>Hechinger Inv. Co. of Del., Inc. v. Hechinger Liquidation Trust (In re Hechinger Inv. Co. of Del., Inc.)</u>, 296 B.R. 323, 325 (Bankr. D. Del. 2003).

To determine whether a change of venue serves the interest of justice, courts have considered the following nonexclusive factors:  (1) the location of the pending bankruptcy; (2) whether the transfer would promote the economic and efficient administration of the bankruptcy estate; (3) whether the interests of judicial economy would be served by the transfer; (4) whether the parties would be able to receive a fair trial in each of the possible venues; (5) whether either forum has an interest in having the controversy decided within its borders; (6) whether the enforceability of any judgment obtained would be affected by the transfer; and (7) whether the plaintiff's original choice of forum should be disturbed.  See <u>Maya, LLC v. Cytodyn of New Mexico, Inc. (In re Cytodyn of New Mexico, Inc.)</u>, 374 B.R. 733, 742 (Bankr. C.D. Cal. 2007); <u>TIG Ins. Co.</u>, 264 B.R. at 668.  With respect to "convenience of the parties," courts have weighed the following:  (1) ease of access to the necessary proof; (2) the convenience of witnesses and the parties and their relative physical and financial condition; (3) the availability of

---

[12]  Venue Motion, 16:5-21; 17:7-20.

the subpoena power for unwilling witnesses; and (4) the expense related to obtaining witnesses.
Id.

Defendants filed a Motion for Abandonment and Relief from Stay ("Stay Relief Motion") in Debtor's bankruptcy case in the Western District of Washington.  The matter is set for hearing on September 19, 2014.  Defendants assert that a change of venue serves the interest of justice because "the Trustee's Litigation and the Stay Relief Motion involve the Agreement" and "the Trustee [is] unfairly forc[ing] Cal Poly to fight in two different districts that are thousands of miles apart."[13]  Defendants also claim that "parties will be inconvenienced if they must coordinate additional travel or incur additional legal expenses litigating related issues in both this Court and the Home Court."[14]

Defendants elected to file the Stay Relief Motion in the Debtor's bankruptcy case in the Western District of Washington.  Defendants were not _forced_ to do so by Klein.  Secondly, "[s]tay litigation is limited to issues of the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization." Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740 (9th Cir. 1985), cert. denied, 474 U.S. 828 (1985).  "Hearings on relief from the automatic stay are thus handled in a summary fashion.  Id. (emphasis added).  "The validity of the claim or contract underlying the claim is not litigated during the hearing." Id.  Finally, there is no evidence of any ongoing litigation between Klein and Defendants in the Western District of Washington, other than the Stay Relief Motion, nor is there evidence of ongoing attorneys' fees and costs associated therewith.

2.  Transfer of Venue Would Not Serve the Interest of Justice.

While the first factor weighs in favor of the Defendants in that the pending bankruptcy case is located in the Western District of Washington, the court is not convinced that a transfer would promote the economic and efficient administration of the bankruptcy estate.  First, there is no evidence that this matter is so inextricably related to Debtor's bankruptcy case that it must be

---

[13] Id. at 16:15-19.

[14] Id. at 17:17-19.

litigated in the Western District of Washington.  On the contrary, Klein's complaint alleges that a transfer was made by Debtor to the Defendants in California, and that the transfer is avoidable under California state law.  Indeed, everything related to the transfer that is the subject of Klein's complaint occurred in California.  The claims made the basis of Klein's complaint arise under California law, and the Agreement upon which the claims are asserted was written, signed and performed in California.  Debtor is in prison in California.  Each of the Defendants either resides in or maintains its principal place of business in the California.  All of the material witnesses, including non-party witnesses, and the Defendants' respective agents and employees appear to be located in the state of California.  None of the events relevant to Klein's claims or its defense arose in the Western District of Washington.  Only Klein has ties to Washington and he elected to pursue the estate's claims in California.  In light of the Defendants' connections to California and the proximity to witnesses and documents in California, the court finds that it would be significantly more burdensome and expensive for the parties to litigate this proceeding in the Western District of Washington.

Judicial economy "weighs in favor of transfer, based solely on the relatively meaningless fact, here, that if transferred, a single court would then be in charge of both the bankruptcy and the litigation."  See Cytodyn of New Mexico, 374 B.R. at 743.  But Defendants admit that "the fourth, fifth and sixth interest of justice factors do not weigh strongly for or against transfer."[15] Notwithstanding, a California court does have a "greater interest in deciding issues which may affect [California] residents and/or the development of [California] law."  See Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.), 282 B.R. 140, 148 (D. Del. 2002).  Finally, Klein's original choice of forum weighs against transfer.  Klein, who had the choice to file in the Western District of Washington, elected to commence the action in the California state court given the fact that, among other things: (1) the claims made the basis of Klein's complaint arise under California law; (2) Defendants each reside or maintain their principal place of business in California; (3) the Agreement upon which the claims are asserted was written, signed and

---

[15] Id. at 16:18-19.

performed in California; and (4) the material witnesses and evidence appear to be located in California. As previously stated, the California state court had concurrent jurisdiction to consider Klein's claims, and venue was appropriate in the Superior Court of California, County of San Luis Obispo. Defendants chose to remove Klein's complaint to this court, but have not established why Klein's original choice of forum should be disturbed or that it would serve the interest of justice by transferring the proceeding to the Western District of Washington. In sum, only 2 of the 7 factors weigh in favor of changing venue in the interest of justice.

         3.  <u>Transfer of Venue Is Not Warranted for the Convenience of the Parties</u>.

         Nor have Defendants established by a preponderance of the evidence that a transfer of venue is warranted for "the convenience of the parties." For the reasons previously stated, the court finds that factors 1, 2 and 4 relevant to convenience of the parties weigh against transfer. With respect to the third factor, the ability to subpoena non-party witnesses would be served if the litigation remained in California given the location of material witnesses and documents in California. <u>See</u> FRBP 9016 (incorporating F.R.Civ.P. 45(b)(2), which limits the court's subpoena power to a 100-mile radius from the courthouse). Finally, the parties would be required to bear significant travel expenses for themselves, their attorneys and witnesses were the proceeding to be litigated and tried in the Western District of Washington.

         Having weighed the above factors, the court concludes that Defendants have not met their burden to establish that transfer of this adversary proceeding to the Western District of Washington is either in the interest of justice or warranted for the convenience of the parties. Therefore, Defendant's Motion to Transfer Venue will be denied.

C.  Defendants' Motion to Dismiss Under F.R.Civ.P. 12(b)(1) Will Be Denied.

Defendants' challenge the court's subject matter jurisdiction to hear Klein's complaint pursuant to F.R.Civ.P. 12(b)(1).[16]  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint.  Id.  In a factual attack, the movant disputes the truth of the allegations that otherwise would give rise to federal jurisdiction.  Id.  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  Id.

Defendants admit in the Removal Notice that the proceeding involves a federal question.[17]  Jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional.  Sun Valley Gasoline, Inc. v. Ernst Enters., Inc., 711 F.2d 138, 139 (9th Cir. 1983).  Dismissal for lack of subject matter jurisdiction is warranted only "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous."  Id. at 140 (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946)).  Dismissal is not warranted "when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of the action."  Id. at 139 (quoting Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983); see, e.g., Save Air for Everyone, 373 F.3d at 1039-1040; Gentek Bldg Prods., Inc. v. Steel Peel Litig. Trust, 491 F.3d 320, 330 (6th Cir. 2007) ("If . . . an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should 'find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" (citation omitted) (emphasis in original)).

---

[16]  F.R.Civ.P. 12(b)(1) is applicable to adversary proceedings by FRBP 7012.

[17]  Removal Notice, 2:5-6.

11

1

In this case, Klein has invoked § 544(b)(1) to avoid a transfer of an interest in the debtor

2

in property that is avoidable under applicable law by an unsecured creditor of the debtor.  11

3

U.S.C. § 544(b)(1).  CUFTA is the applicable law.  Defendants admit that § 106(a) abrogates

4

sovereign immunity as to a governmental unit with respect to causes of action under § 544,

5

notwithstanding an assertion of sovereign immunity. 11 U.S.C. § 106(a).[18]  However, Defendants

6

claim that this court lacks subject matter jurisdiction over Klein's complaint for two reasons:  (1)

7

Defendants assert that § 106(a)'s sovereign immunity abrogation does not extend to actions

8

brought under § 544(b)(1) which arise under CUFTA;[19] and (2) while California has admittedly

9

10

[18] Dismissal Motion, 10:26 – 11:3.  "There is no question that section 106(a) of the Bankruptcy
Code abrogates sovereign immunity as to governmental units 'with respect to' numerous sections

11

of the Bankruptcy Code, including section 544."  Id.

12

[19] Id. at 11:3-5.  "But while section 106(a) authorizes the Trustee to sue a governmental unit
under section 544, section 106(a) does not authorize a creditor outside of bankruptcy to sue a

13

governmental unit."  Id.  The majority of bankruptcy courts to address this issue hold that §

14

106(a)'s abrogation of sovereign immunity as to claims under § 544 permits a trustee to prevail
on a § 544(b)(1) claim without establishing the existence of an actual unsecured creditor who

15

could avoid the transfer under state law.  See, e.g., VMI Liquidating Trust Dated December 16,

16

2011 v. United States (In re Valley Mortg., Inc.), 2013 WL 5314369, at *4 (Bankr. D. Colo.
Sept. 18, 2013); David Cutler Indus., Inc. v. Penn. Dept. of Revenue (In re David Cutler Indus.,

17

Ltd.), 471 B.R. 110, 113 (Bankr. E.D. Pa. 2012); Zazzali v. Swenson (In re DBSI, Inc.), 2011

18

WL 607442, at *5 (Bankr. D. Del. Feb. 11, 2011); Furr v. United States Dep't of Treasury (In re
Pharmacy Distrib. Servs., Inc.), 455 B.R. 817, 820-21 (Bankr. S.D. Fla. 2011); Tolz v. United

19

States (In re Brandon Overseas, Inc.), 2010 WL 2812944, *4 (Bankr. S.D. Fla. July 16, 2010);

20

Sharp v. United States (In re SK Foods, L.P.), 2010 WL 6431702, *2 (Bankr. E.D. Cal. July 14,
2010); Liebersohn v. IRS (In re C.F. Foods, L.P.), 265 B.R. 71, 85-86 (Bankr. E.D. Pa. 2001).

21

Other courts, including the Seventh Circuit Court of Appeals, disagree, holding that "§ 106(a)(1)

22

does not displace the actual-creditor requirement in § 544(b)(1).  In re Equip. Acquisition Res.,
Inc., 742 F.3d 743, 744 (7th Cir. 2014); see, e.g., United States v. Field (In re Abatement Envtl.

23

Res., Inc.), 301 B.R. 830 835 (D. Md. 2003); Bauer v. G.E. Capital Corp. (In re Oncology

24

Assocs. of Ocean County LLC), 510 B.R. 463, 470 (Bankr. D.N.J. 2014); Dilworth v. Ginn (In re
Ginn – La St. Lucie Ltd., LLLP), 2010 WL 8756757, *6 (Bankr. S.D. Fla. Dec. 10, 2010);

25

Grubbs Constr. Co v. Fla. Dept. of Revenue (In re Grubbs Constr. Co.), 321 B.R. 346, 352

26

(Bankr. M.D. Fla. 2005).  Cf. Field v. Montgomery Cnty. (In re Anton Motors, Inc.), 177 B.R.
58, 66-67 (Bankr. D. Md. 1995), aff'd, 102 Fed. Appx. 272, 275 (4th Cir. 2004).  In Menotte v.

27

United States (In re Custom Contractors, LLC), 745 F.3d 1342, the Eleventh Circuit recently

28

waived its sovereign immunity on a limited basis under the Government Claims Act,[20] Klein (a) "cannot allege the existence of a creditor as of the petition date who could have asserted the fraudulent transfer claims" against Defendants[21] and (b) Klein's alleged "failure to comply with the Government Claims Act precludes this court from exercising jurisdiction over the Trustee's Causes of Action against" Defendants.[22]  "[T]he determinative jurisdictional facts also go directly to the merits."  <u>Augustine</u>, 704 F.2d at 1077.

The court finds that the jurisdictional issue and substantive issues in this case are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits.  Defendants have not alleged that Klein's federal claims are immaterial, made solely for the purpose of obtaining federal jurisdiction, or wholly insubstantial and frivolous.  Whether Klein's alleged claims against Defendants come within the reach of §544(b)(1) goes to the merits of Klein's action.  For this reason, the court will assume jurisdiction over this adversary proceeding and decide the matter on the merits.  The scope of § 106(a)'s sovereign immunity abrogation is an issue that will be left for another day.  Defendants' Motion to Dismiss for lack of subject matter jurisdiction pursuant to F.R.Civ.P. 12(b)(1) is denied.

---

discussed the split of authority but concluded that it "need not decide the issue . . . because [the trustee] ha[d] failed to prove that the transfers were avoidable under [Florida's Uniform Fraudulent Transfers Act]. . . regardless of whether [a trustee] can – or must – prove the existence of an actual creditor."  <u>Id.</u> at 1348.   The Ninth Circuit has stated that "the existence of a section 544(b) cause of action 'depends upon whether . . . a creditor existing at the time the transfers were made . . . still had a viable claim against [the] debtor <u>at the time the bankruptcy petition was filed</u>."  <u>Acequia, Inc. v. Clinton (In re Acequia, Inc.)</u>, 34 F.3d 800, 807 (9th Cir. 1994) (emphasis in original).  But the Ninth Circuit has yet to address the interplay between § 106(a) and § 544(b)(1).

[20] Cal. Gov't Code § 945, <u>et. seq.</u>

[21] Dismissal Motion, 4:23-25.

[22] <u>Id.</u> at 9:17-19.

1

2

D. <u>Defendants' Motion to Dismiss Under F.R. Civ.P. 12(b)(6) Will Be Granted With Leave
to Amend</u>.

3

1. <u>Standard for Dismissal Under Rule 12(b)(6)</u>

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Rule 12(b)(6) authorizes the court, upon motion of the defendant, to dismiss a complaint
for failure to state a claim upon which relief can be granted.[23]  F.R.Civ.P. 12(b)(6).  Under Rule
8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader
is entitled to relief."[24]  F.R.Civ.P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not
require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-
unlawfully-harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell
Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 555 (2007)).  "[A] complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Iqbal</u>,
556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550
U.S. at 556).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's
liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"
<u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557).  Further, although a court must
accept as true all factual allegations contained in a complaint, a court need not accept plaintiff's
legal conclusions as true.  <u>Iqbal</u>, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> (quoting <u>Twombly</u>, 550
U.S. at 555).

22

23

24

In the bankruptcy context, <u>Twombly</u> means that a plaintiff can no longer simply recite the
statutory language of the particular Code section under which a claim is brought and expect the
complaint to give sufficient notice to a defendant of the plaintiff's claim for relief.  To pass

25

[23]  Rule 12(b)(6) is applicable to adversary proceedings by FRBP 7012(b).

26

[24]  Rule 8(a) is applicable to adversary proceedings by FRBP 7008(a).

27

28

muster under <u>Twombly</u>, a plaintiff must state a plausible claim for relief by identifying the

specific facts upon which the plaintiff relies to support a reasonable inference of the defendant's

liability on plaintiff's claim.  Only then will a defendant have sufficient notice of plaintiff's

claim under Rule 8(a).  <u>See, e.g.</u>, <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009)

("the non-conclusory 'factual content,' and reasonable inferences from that content . . . [must]

plausibly [suggest] a claim entitling the plaintiff to relief."); <u>Limestone Dev. Corp. v. Vill. of

Lemont, Ill.</u>, 520 F.3d 797, 802-03 (7th Cir. 2008) (stating that <u>Twombly</u> "teaches that a

defendant should not be forced to undergo costly discovery unless the complaint contains enough

detail, factual or argumentative, to indicate that the plaintiff has a substantial case").

    2.  <u>Klein's Complaint Fails to State a Plausible Claim for Avoidance and Recovery of an
Actual Fraudulent Transfer</u>

    Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake."  F.R.Civ.P. 9(b).  Rule 9(b)'s heightened

pleading standard applies to allegations of fraud and allegations sounding in fraud, including

false misrepresentations.  <u>See</u> <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106-07 (9th Cir.

2003); <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003).

Allegations under Rule 9(b) must be stated with "specificity including an account of the time,

place, and specific content of the false representations as well as the identities of the parties to

the misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007).  "To comply

with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the

particular misconduct which is alleged to constitute the fraud charged so that they can defend

against the charge and not just deny that they have done anything wrong."  <u>Bly-Magee v.

California</u>, 236 F.3d 1014, 1019 (9th Cir.2001) (citations/ internal quotations omitted).

Moreover, where a plaintiff pleads allegations of fraud against more than one defendant, Rule

9(b) "requires that a plaintiff plead with sufficient particularity attribution of the alleged

misrepresentations or omissions to each defendant."  <u>In re Silicon Graphics, Inc. Sec. Litig.</u>, 970

F.Supp. 746, 752 (N.D. Cal. 1997).

1    To state a claim for fraud, the plaintiff must also plead knowledge of falsity, or scienter.

2  See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1546 (9th Cir. 1994) (en banc).  The

3  requirement for pleading scienter is less rigorous than that which applies to allegations regarding

4  the "circumstances that constitute fraud" because Rule 9(b) states that "[m]alice, intent,

5  knowledge, and other conditions of a person's mind may be alleged generally."  F.R.Civ.P. 9(b).

6  However, the plaintiff must "set forth facts from which an inference of scienter could be drawn."

7  Cooper v. Pickett, 137 F.3d 616, 628 (9th Cir. 1997) (quoting GlenFed, 42 F.3d at 1546).

8    Under California law, a transfer made with the actual intent to hinder, delay or defraud

9  any creditor of the debtor violates CUFTA § 3439.04; see Mejia v. Reed, 31 Cal.4th 657, 664

10  (2003).  To prevail under CUFTA § 3439.04(a)(1), Klein must establish by a preponderance of

11  the evidence that the Debtor transferred the sum of $625,000 to the Defendants through the Fund

12  with the actual intent to hinder, delay or defraud a creditor.  See Wolkowitz v. Beverly (In re

13  Beverly), 374 B.R. 221, 235 (9th Cir. BAP 2007) ("Whether there is actual intent to hinder,

14  delay, or defraud under UFTA is a question of fact to be determined by a preponderance of

15  evidence.").  Because a debtor rarely admits to such a transfer, the evidence of intent "must of

16  necessity consist of inferences drawn from the circumstances surrounding the transaction and the

17  relationship and interests of the parties."  Neumeyer v. Crown Funding Corp., 56 Cal.App.3d

18  178, 183 (1976); see Beverly, 374 B.R. at 235 ("Since direct evidence of intent to hinder, delay

19  or defraud is uncommon, the determination typically is made inferentially from circumstances

20  consistent with the requisite intent.").  The UFTA identifies 11 non-exclusive factors, or "badges

21  of fraud," that may be applied by a court to divine fraudulent intent:

22    1.    Whether the transfer or obligation was to an insider.

23    2.    Whether the debtor retained possession or control of the property after the
24  transfer.

25    3.    Whether the transfer or obligation was disclosed or concealed.

26    4.    Whether the debtor was sued or threatened with suit before the transfer
27  was made or obligation incurred.

28

5.      Whether the transfer was of substantially all of the debtor's assets.

6.      Whether the debtor absconded.

7.      Whether the debtor removed or concealed assets.

8.      Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or obligation incurred.

9.      Whether the debtor was insolvent or became insolvent shortly after the transfer was made or obligation incurred.

10.     Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

11.     Whether the debtor transferred essential assets of the business to a lienholder who then transferred the assets to an insider of the debtor.

CUFTA § 3439.04(b).  The CUFTA factors are intended "to provide guidance to the trial court, not compel a finding one way or another."  Filip v. Bucurenciu, 129 Cal.App.4th 825, 834 (2005).  As the court observed in Beverly:

> The [C]UFTA list of "badges of fraud" provides neither a counting rule nor a mathematical formula.  No minimum number of factors tips the scales toward actual intent.  A trier of fact is entitled to find actual intent based on the evidence in the case, even if no "badges of fraud" are present.  Conversely, specific evidence may negate an inference of fraud notwithstanding the presence of a number of "badges of fraud."

374 B.R. at 236.

In this case, Klein alleges in his complaint that "the Transfer was made pursuant to the Moriarity Ponzi Scheme"[25] and "that the Debtor's actual intent to hinder, delay or defraud his creditors may be inferred from the mere existence of the Moriarity Ponzi Scheme."[26]  However, Klein's complaint does not contain facts describing the Moriarity Ponzi Scheme nor does it contain specific facts to support a reasonable inference that the subject transfers were connected to the Moriarity Ponzi Scheme.  Furthermore, Klein's complaint does not allege sufficient facts to

---

[25] Removal Notice, 11:16.

[26] Id. at 13:1-3.

17

form the basis for a finding that the subject transfers actually hindered, delayed or defrauded a creditor of the Debtor or that the Debtor intended the subject transfers to do so on the date of the transfer.

In paragraph 24 of the complaint, Klein alleges one "badge of fraud" from which the court is asked to divine the requisite actual intent.[27]  However, the allegations in Klein's complaint "set forth [few] facts from which an inference of scienter [can] be drawn."  See Cooper, 137 F.3d at 628.  The allegations in paragraph 24 of Klein's complaint constitute a legal conclusion "which may not [be] substitute[d] for well-pleaded facts allowing the Court to reasonably infer that those conclusions are true."  Allstate Ins. Co. v. Countrywide Fin. Corp., 842 F.Supp.2d 1216, 1226 (C.D. Cal.2012).

Absent the following facts, Klein's complaint fails to state a plausible claim to recover an actual fraudulent transfer under § 544(b) and CUFTA § 3439.04(a)(1):

1) Facts describing the Moriarty Ponzi Scheme, and specific facts to support a reasonable inference that the subject transfers are connected to the Moriarty Ponzi Scheme;

2) The value received by Debtor in exchange for the subject transfers to the Fund, together with facts forming the basis for such valuation;

3) Facts that form the basis for Klein's assertion in paragraph 25 of the complaint "that, at the time the Transfer was made, Moriarty was engaged or was about to engage in a business or a transaction for which the remaining assets of Moriarty were unreasonably small in relation to the business or transaction."[28]

4) Facts that form the basis for Klein's assertion in paragraph 26 of the complaint "that at the time the Transfer was made, Moriarty intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay such debts as they became due."[29]

For these reasons, Klein's first cause of action to avoid and recover an actual fraudulent transfer must be dismissed for failure to state a claim upon which relief can be granted.

---

[27] Id. at 13:4-5.

[28] Id. at 13:6-9.

[29] Id. at 13:10-12.

3. <u>Klein's Complaint Fails to State a Plausible Claim for Avoidance and Recovery of a Constructively Fraudulent Transfer</u>

Courts do not generally apply the heightened pleading standard of Rule 9(b) to constructive fraud claims. <u>The 1849 Condominiums Assoc., Inc. v. Bruner</u>, 2010 WL 2557711 (E.D. Cal. 2010), citing <u>Cendant Corp. v. Shelton</u>, 474 F.Supp.2d 377, 380 (D. Conn. 2007). Rule 9(b) is inapplicable because constructive fraud claims "are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of the consideration provided by the transferee." <u>In re Careamerica, Inc.</u>, 409 B.R. 737, 755-56 (Bankr. E.D.N.C. 2009). Still, a constructive fraud claim must satisfy Rule 8(a) and contain sufficient facts to establish that the claim is plausible.

Under California law, constructive fraud may be found as to any present or future creditor when a debtor does not receive a reasonably equivalent value in exchange for a transfer, and either

(A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, [or]

(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Cal. Civ. Code § 3439.04(a)(2). Similarly, constructive fraud can be found under Cal. Civ. Code § 3439.05, "as to an existing creditor if the debtor does not receive reasonably equivalent value and 'was insolvent at that time or ... became insolvent as a result of the transfer" <u>Mejia v. Reed</u>, 31 Cal.4th at 670, <u>quoting</u> Cal Civ. Code § 3439.05.

Here, Klein's constructive fraud claim is insufficiently stated and must be dismissed. At its core, "a constructive fraudulent transfer has two elements: reasonable equivalent value and insolvency." <u>Allstate Ins. Co.</u>, 842 F.Supp.2d at 1224. Klein's complaint merely recites statutory language and does not state sufficient facts to show plausibly that on the date of the transfer the Debtor was actually insolvent or received less than was given to the Defendants.

19

Absent the following facts, Klein's complaint fails to state a plausible claim to recover a constructive fraudulent transfer under § 544(b) and CUFTA § 3439.05:

1. The value received by Debtor in exchange for the subject transfers to the Fund, together with facts forming the basis for such valuation;

2. Facts that form the basis for Klein's assertion in paragraph 29 of the complaint that "the Transfer was made for less than reasonably equivalent value."[30]

3. Facts that form the basis for Klein's assertion in paragraph 30 of the complaint "that Moriarty was insolvent or became insolvent as a result of the transfer."[31]  [A debtor is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at fair valuation."  11 U.S.C. § 101(32)(A)].

For these reasons, Klein's second cause of action to avoid and recover constructive fraudulent transfer must be dismissed for failure to state a claim upon which relief can be granted.

    4. <u>Klein's Complaint Properly Alleges the Existence of an Unsecured Creditor</u>

    "When analyzing the sufficiency of a complaint for purposes of Rule 12(b)(6), courts to not generally require a trustee to plead the existence of an unsecured creditor by name, although the trustee must ultimately prove such a creditor exists . . .   A complaint, however, must set forth sufficient information to outline the elements of [the] claim or permit inferences to be drawn that these elements exist."  <u>In re D'Angelo</u>, 491 B.R. 395, 405 (E.D. Pa. 2013) (quoting <u>In re APF CO.</u>, 274 B.R. 634, 639-40 (Bankr. D. Del. 2001)).  In paragraph 20 of the complaint, Klein alleges that "there was and is at least one creditor of Moriarty in existence at the time of the Transfer who holds an allowed unsecured claim against Moriarty that was and is allowable under Bankruptcy Code § 502."[32]  Therefore, Defendants' Motion to Dismiss for Klein's failure to allege the existence of a "triggering creditor' as of the petition date is denied.

---

[30] <u>Id.</u> at 13:19-20.

[31] <u>Id.</u> at 13:21-22.

[32] <u>Id.</u> at 12:18-20.

5. <u>Leave to Amend</u>

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave [to amend] when justice so requires."  F.R.Civ.P. 15(a)(2).[33]  If a complaint lacks facial plausibility, a court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment.  <u>Gompper v. VISX, Inc.</u>, 298 F.3d 893, 898 (9th Cir. 2002).  It is not clear to the court at this juncture whether the deficiencies in Klein's complaint cannot be cured by amendment.

CONCLUSION

For the reasons stated, Defendants' Motion to Transfer Venue will be denied. Defendants' Motion to Dismiss insofar as it seeks dismissal pursuant to F.R.Civ.P. 12(b)(1) and (3) will be denied. As Klein fails to state a claim upon which relief can be granted with respect to each of the counts in the Complaint, Defendants' motion to dismiss under F.R.Civ.P. 12(b)(6) will be granted with leave to amend.  Klein must file and serve Plaintiff's First Amended Complaint not later than January 9, 2015, to cure the deficiencies identified above and to state a plausible claim for relief on each of his causes of action.  Defendants must file and serve a response to Klein's First Amended Complaint not later than February 6, 2015.  The status conference currently set for January 8, 2015, will be continued to 10:00 a.m. on March 12, 2015. In the event Defendants' seek dismissal pursuant to F.R.Civ.P. 12(b) in response to Klein's First Amended Complaint, Defendants' motion must be set on regular notice for a hearing at 10:00 a.m. on March 12, 2015.

A separate order will be entered consistent with this opinion.

###

Date: November 20, 2014

Peter H. Carroll
United States Bankruptcy Judge

---

[33]  Rule 15(a)(2) is applicable to adversary proceedings by FRBP 7015.